UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HASSAN EDWARDS,

        Petitioner

   v.

CHARLES GREINER,
Superintendent, Green Haven Correctional
Facility,

        Respondent.
------------------------------------------------------------X

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
03-CV-6124

GARAUFIS, United States District Judge.

       Petitioner Hassan Edwards ("Petitioner" or "Edwards") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed on November 20, 2003, he challenges the constitutionality of a sentence imposed pursuant to his conviction in the New York State Supreme Court, Kings County. Having reviewed the state court record and the parties' submissions, for the reasons set forth below, the Petitioner's writ of habeas corpus is DENIED.

**I.    Background**

       The Petitioner was charged under Kings County Indictment Number 1811/98 with two counts of murder in the first degree (N.Y. Penal Law § 125.27(1)(a)(vii)), three counts of murder in the second degree (N.Y. Penal Law §§ 110.00/160.15(1), (2)), and one count each of attempted robbery in the second degree (N.Y. Penal Law §§ 110.00/160.05), criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03), and criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)). Petitioner proceeded to trial before the Honorable Anne G. Feldman in the New York Supreme Court, Kings County, and a jury found

1

him guilty of murder in the first degree and criminal possession of a weapon in the second degree.

Initially, after his arrest, the Petitioner was represented by attorneys from the Legal Aid Society's Capital Defense Unit. These attorneys conducted an investigation into Edwards' personal characteristics and compiled the results in a "Preliminary Mitigation Report," which they presented to the Kings County District Attorney in an effort to dissuade him from seeking the death penalty. (Prelim. Mitigation Report at 1-2.) After the District Attorney elected not to seek the death penalty, the Legal Aid Society was relieved from representing Edwards and Michael Mays ("Mays") entered the case on Edwards' behalf.[1] (Mem. Law Supp. Edwards' Pet. for Writ of Habeas Corpus ("Edwards' Pet.") at 8.) Mays represented Edwards throughout the trial court proceedings. (Id.)

A.     **The Conviction and Sentencing**

A jury convicted the Petitioner of murder in the first degree and criminal possession of a weapon in the second degree for events surrounding the robbery and murder of a woman named Leslie Avila Clark, which occurred in the early morning hours of February 7, 1998 on the median of Eastern Parkway near the corner of Lincoln Avenue in Brooklyn.

Under New York Law, following a conviction for murder in the first degree, absent a prosecutorial request for death by lethal injection, a court "will sentence the defendant to a term of imprisonment with a minimum term of between twenty and twenty-five years and a maximum term of life." C.P.L. § 400.27(10). The indeterminate sentence would make a defendant eligible

---

[1] Although Petitioner asserts that Mays was retained as private counsel (Edwards' Pet. at 8), this court is unaware from the record as to whether Mays was privately retained or appointed by the court.

for parole after service of the minimum period of imprisonment. McKinney's Annotated New York Penal Law, Practice Commentary to § 125.27 (2003). For second degree criminal possession of a weapon, New York Penal Law requires an indeterminate prison term with a maximum sentence of up to fifteen years and a minimum sentence of half of the maximum. The statute allows for parole consideration upon completion of the minimum sentence. McKinney's Annotated New York Penal Law, Practice Commentary to Article 70 (2003).

At the sentencing hearing on February 10, 1999, the prosecutor emphasized the legal distinction between murder in the first degree and murder in the second degree, and he described the choice before the court as one between twenty-five years to life and life without parole. Given the first degree murder conviction, the prosecutor asked the court to impose the maximum sentence of life without parole. (Sentencing Tr. 3-4.) The prosecutor supported this request by suggesting to the court that Edwards had already "been given any and all breaks he is entitled to when the District Attorney of this county decided not to seek death in this case." (Id. at 4.) He noted that the prosecutor's decision not to seek death but rather life without parole was informed by an evaluation of all mitigating evidence submitted by the defense. (Id.)

Edwards' counsel, Mays, asked that the court not impose the maximum sentence, citing Edwards' youth and lack of prior convictions. (Id. at 13.) He made the following remarks regarding Edwards' personal characteristics:

> In addition, Your Honor, my client does have substantial family problems and social problems and all that is well documented. I believe the district attorney is aware of all of that and all of that went into perhaps the reason why the district attorney sought not to seek the death penalty, not because [of] some leniency or great love of my client.

(Id.) Specifically, Edwards' counsel made reference to Edwards' childhood spent in foster and

3

adoptive care. Counsel also described the support that Edwards received from his adoptive grandmother, community, and church. He described the opportunity that he had to visit Edwards' community and to meet with and see his client's support network. Counsel noted that he "was quite puzzled how someone who comes from such a supportive environment not only family but extra family in terms of community and church, how he could be caught in this position." (Id.) In his closing plea for leniency, counsel asked that the court look at Edwards' age and background and "show some leniency and obviously whoever did this to this young lad didn't show any leniency but I'm asking the court to show leniency." (Id. at 15-16.)

At sentencing, Judge Feldman responded to statements made by Edwards, specifically his statement: "I didn't do it." (Id. at 17.) Judge Feldman explained that if she felt that the jury's verdict was wrong she might consider giving a more lenient sentence; however, she believed the jury's verdict to be sound. (Id. at 17-18.) She further addressed Edwards: "I think as [prosecutor] Schriber points out you're behavior throughout indicated [a] complete lack of understanding of the value of human life and complete lack of understanding that even though somebody might be sick and addicted to drugs they still have a right to live." (Id. at 18.)

With regard to the sentencing options, Judge Feldman remarked that the legislature had not provided her with many choices:

> I can either give you life without parole or I can sentence you to the same sentence you would have gotten if you had been convicted of a felony murder, which is not an intentional murder. There's a difference between killing somebody in the course of a robbery without deliberate intent to do something.
>
> The evidence here indicated you deliberately killed this woman and the jury found that was murder in the first degree.
>
> And my view, you should receive the maximum sentence because there is no

> alternative for you. If there was something higher than 25 to life I would probably be giving it to you but there isn't.
>
> The legislature has spoken and I'm required to follow the law. So I'm going to sentence you now to life without parole for the crime of murder in the first degree.

(Sentencing Tr. 18-19.)

The Petitioner was sentenced to concurrent prison terms of life without the possibility of parole for murder and five to ten years for weapon possession. (Sentencing Tr. 19-20) He is currently incarcerated at Green Haven Correctional Facility pursuant to this judgment of conviction.

**B.      Post-Conviction Appeals**

The Petitioner filed a timely Notice of Appeal as well as a request for poor person relief. He was assigned M. Sue Wycoff, since succeeded by Laura R. Johnson of the Legal Aid Society, as counsel. (Edwards' Pet. at 13.) In his brief to the Appellate Division, Second Department, the Petitioner raised four claims including ineffective assistance of counsel at the sentencing proceedings. Regarding that claim, Edwards argued that his counsel failed to advise the court that a sentence of less than life without parole but more than twenty-five years to life was permissible. Further, he claimed that the sentence imposed was excessive. (Br. for Def.-Appellant, dated Apr. 2001.) Also at this time, new counsel filed a motion to expand the record on appeal to include materials, namely the mitigation materials, that the trial counsel had failed to submit. (Notice of Mot. to Enlarge R. on Appeal, Apr. 5, 2001.) This motion was denied. (Appellate Div. Order, dated May 4, 2001.)

On November 13, 2001, the Appellate Division affirmed the Petitioner's conviction on direct appeal. People v. Edwards, 288 A.D.2d 320 (2d Dept. 2001). With respect to the claim of

ineffective assistance of counsel at sentencing, the Appellate Division held that Edwards' counsel was not ineffective, and the excessive sentence claim was without merit. Id.

On December 14, 2001, the Petitioner sought leave to appeal to the New York Court of Appeals, raising the same issues that he had raised in his brief to the Appellate Division. The New York Court of Appeals denied the Petitioner leave to appeal on March 26, 2002. People v. Edwards, 97 N.Y.2d 753 (2002). The Petitioner requested that the New York Court of Appeals reconsider this decision denying Edwards' leave application. This leave motion was granted on December 31, 2002. On reconsideration, the Court of Appeals again denied permission to appeal from the Appellate Division's order. People v. Edwards, 99 N.Y.2d 557 (2002).

The Petitioner moved for the court to set aside his sentence pursuant to C.P.L. § 440.20 on March 17, 2003. At this time, he repeated his claim that his trial counsel provided ineffective assistance at sentencing. Specifically, he claimed that his counsel was ineffective because his counsel did not utilize or present to the sentencing court the Preliminary Mitigation Report prepared by the Legal Aid Society's Capital Defense Unit. (Def.'s Aff. in Supp. of Mot. Pursuant to C.P.L. §440.20(1) at 1.)

On June 13, 2003, the New York State Supreme Court, Kings County, summarily denied Edwards' motion to set aside his sentence, finding that Edwards' counsel's failure to raise the facts contained in the Preliminary Mitigation Report did not constitute ineffective assistance. The court found it sufficient that counsel mentioned that Edwards' family and social problems were documented. Further, according to the court, the failure of Edwards' counsel to raise the details of the report at sentencing did not create prejudice because it did not adversely affect the sentence. (Ste. S. Ct., Kings County, Decision & Order dated Jun. 13, 2003.) Edwards applied

to the Appellate Division for permission to appeal this denial of his motion to set aside his sentence. This application was denied by an order dated August 28, 2003.

The Petitioner filed the pending application for a writ of habeas corpus in this court on November 20, 2003. In his petition, as he did on his direct appeal and in his motion to set aside his sentence, he claimed that he had been denied his Sixth Amendment right to effective assistance of counsel. Specifically, the Petitioner claimed that his trial counsel "failed to present mitigating evidence, failed to be familiar with [the] law allowing [a] sentence [of] less than life-without-parole and more than 25 year[s]-to-life, and denigrated his client at the sentencing hearing."[2] (Pet. for Writ of Habeas Corpus at 4.)

On June 15, 2004, the Petitioner submitted a motion to withdraw his habeas petition without prejudice to allow him to exhaust additional claims, specifically a motion pursuant to CPL § 440.10, in state court. This court granted the motion to withdraw and directed the clerk to administratively close Edwards' case by an order dated August 19, 2004. In September 2005, Edwards moved to re-open his case. This court granted his motion to re-open the case by an order dated March 14, 2006.

## II. Discussion

### A. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard of review for habeas corpus petitions. For claims that have been fully adjudicated on the merits

---

[2]Contrary to the Petitioner's assertion in the instant Petition, neither the Petitioner's motion to vacate his sentence nor the New York State Supreme Court's response raise the issue of whether counsel at sentencing disparaged his own client. (Def.'s Aff. in Supp. of Mot. Pursuant to C.P.L. §440.20(1) at 1; Edwards' Petition at 4, 15; Ste. S. Ct., Kings County, Decision & Order dated Jun. 13, 2003.)

in state court, a petitioner must show that the state court proceedings:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (per curiam) (holding that habeas relief is warranted "only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

In assessing the "contrary to" provision, the Supreme Court has held that a state court's decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). The "unreasonable application" prong is implicated "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In this analysis, a determination of the reasonableness of the application of the law is derived from an objective, rather than subjective, standpoint. Id. at 409-410. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

**B.    Reviewability**

Before a petitioner seeks a writ of habeas corpus in federal court, he must have exhausted his state court remedies with respect to each claim asserted in his habeas petition. Picard v. Connor, 404 U.S. 270, 275 (1971); 28 U.S.C. §2254(b)(1)(A). To exhaust a claim for federal habeas corpus, a petitioner must "apprise" the state court system "of the facts and the legal theory upon which the petitioner bases his assertion." Granberry v. Greer, 481 U.S. 129, 136 (1987) superseded on other grounds by 28 U.S.C. 2241-2266, (quoting Frisbie v. Collins, 342 U.S. 519, 522 (1952)). First, the petitioner must have previously given the appropriate state court(s) the opportunity to grant relief on the claim on which federal review is sought. Second, the petitioner must have presented to state courts what is, in "substance," the same claim. Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Picard, 404 U.S. at 278.

Where a petitioner raises the same legal claims in state and federal proceedings, reliance in two proceedings on different factual grounds that fundamentally alter the claims renders those claims unexhausted. Vasquez, 474 U.S. at 260. However, "identical grounds [for exhaustion purposes] may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments. . . or be couched in different language. . . or vary in immaterial respects." Sanders v. United States, 373 U.S. 1, 16 (1963); Asherman v. Meachum, 932 F.2d 137, 142 (2d Cir. 1991), vac'd on other grounds, 957 F.2d 978 (2d Cir. 1992) (en banc). Boyko v. Parke, 259 F.3d 781, 789 (7th Cir. 2001) (ineffective assistance of counsel claim, specifically failure to raise self-defense or post traumatic stress disorder theories, was adequately exhausted despite some reframing in federal court by relying on facts contained in a transcript not previously presented).

In the instant case, contrary to the Petitioner's assertion that he "fairly presented" his

9

federal claims to the state courts in two separate challenges, the Petitioner's supporting claim that he was denigrated by his counsel at sentencing fundamentally alters his ineffective assistance of counsel claim, because it more closely resembles a new legal theory, albeit one subsidiary to his broader ineffective assistance of counsel claim, than a mere factual elaboration or addition. I must therefore decide whether this claim is exhausted.

The Petitioner's ineffective assistance of counsel claim was raised on both direct appeal and in a collateral challenge pursuant to C.P.L. § 440.20. The record clearly indicates that the Petitioner received a final state judgment on the merits of two of the three factual bases for his claim. First, on direct appeal, the Appellate Division denied the Petitioner's claim that his counsel was ineffective for failing to correct the trial court's misapprehension of law. Second, on collateral challenge, the Appellate Division denied the Petitioner's claim that his counsel was ineffective for failing to present the court with mitigation evidence at sentencing. This court lacks a record of any C.P.L. § 440.10 motion made in state court by the Petitioner as his intention was indicated by his October 15, 2004 motion to withdraw his habeas petition to exhaust additional state claims.

The procedural posture of the Petitioner's claim cannot be conclusively determined by this court due to a lack of documentation relating to his attempt to exhaust additional claims in state court, specifically a motion pursuant to C.P.L. § 440.10. This court has its doubts regarding the viability of any C.P.L. § 440.10 claim, because there is no evidence that the Petitioner attempted to raise the claim that he was denigrated by his counsel at sentencing on direct appeal. Moreover, as stated <u>infra</u>, I find that this claim has no merit because it does not rise to the level of unreasonable professional conduct required under <u>Strickland v. Washington</u>. <u>Strickland v.</u>

Wash., 466 U.S. 668 (1984). Nevertheless, in favor of equity and the timely disposal of the pending petition, this court will proceed to the merits of the Petitioner's claim of ineffective assistance of counsel at sentencing based on the assumption that the Petitioner's C.P.L. § 440.10 motion was denied on the merits in state court.

Having decided that the Petitioner's claim is not procedurally barred from habeas review, I shall proceed to discuss the merits of the Petition.

**C.     Petitioner's Claim: Ineffective Assistance of Counsel at Sentencing**

The Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel at sentencing, because his counsel failed to correct the court's misapprehension of its sentencing options, failed to present substantial mitigation evidence, and made comments that undermined his own purported plea for leniency and disparaged his own client.

The Sixth Amendment right to a fair trial includes the right to "adequate legal assistance," which protects defendants from defense counsel conduct that "so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Strickland provides the "clearly established law" under which the state court decision must be scrutinized. See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (claim of ineffectiveness based on counsel's failure to investigate and present mitigation evidence is not call for a "new rule" under AEDPA, but rather "squarely governed by our holding in Strickland").

For a court to find that defense counsel deprived a defendant of his Sixth Amendment

right to effective assistance of counsel, first, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Berger v. Raciti, No. 05-CV-1001, 2006 U.S. Dist. WL 1154820, at *5 (E.D.N.Y. May 1, 2006) (Garaufis, J.) (quoting Strickland, 466 U.S. at 694); see also Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

Judicial scrutiny of counsel's performance must be deferential in order to eliminate the distorting effects of hindsight. Due to the evaluative difficulties, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 694 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

1. Claim that Counsel Failed to Correct the Court's Misapprehension of Sentencing Options

Petitioner's claim that his counsel at sentencing was ineffective for failing to correct the court's "misapprehension" of sentencing options is without merit, because his counsel's performance was reasonable under the standard set forth in Strickland.

It was reasonable for counsel to not instruct the court of a consecutive sentencing option, because counsel focused his argument in favor of the minimum sentence for Edwards' first degree murder conviction. The sentencing transcript reflects that counsel repeatedly asked for

leniency and supported his request with reference to Edwards' youth, lack of prior convictions, and family as well as social problems. (Sentencing Tr. 13.) In closing, Mays stated: "I would ask that the Court show leniency and not sentence [Edwards] to the maximum because I think if that happens then that sort of closes the door on this entire tragedy." (Id. at 16.) As a strategy to focus the judge on the preferred sentence, it was reasonable not to introduce a different possible sentencing option. As Justice Feldman stated in her order and decision denying Edwards' motion for re-sentencing, "it is critical in reviewing claims of ineffective counsel to avoid confusing true ineffectiveness with mere losing tactics." (Ste. S. Ct., Kings County, Decision & Order dated Jun. 13, 2003 (quoting People v. Baldi, 54 N.Y.2d 137 (1981).)

Defense counsel's argument at sentencing, although ultimately unsuccessful, differs substantially from the case law presented by the Petitioner in support of his claim. Unlike Somerville v. Conway, where counsel misapprehended the factual predicate for the defendant's sentence, Mays made no misapprehension of fact. Somerville v. Conway, 281 F. Supp. 2d 515 (E.D.N.Y. 2003). And unlike Magana v. Hofbauer, where counsel misadvised his client due to his own ignorance of the law, Mays made no misapprehension of the law. Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001). Instead, Mays' omission of a possible sentence option, especially one that would necessarily require rejection of Petitioner's preferred sentence, does not give rise to an effective assistance of counsel claim.

Furthermore, the Petitioner has failed to establish a reasonable probability that, but for counsel's error, the result would have been more favorable to Edwards. In light of what she viewed as the jury's sound finding of deliberate murder, Judge Feldman was committed to imposing the maximum sentence for first degree murder. (Tr. 17-18.) In addition, if Judge

13

Feldman at any point misapprehended the possibility of crafting an intermediate sentence, no doubt could have remained when she sentenced Edwards for both first degree murder and second degree criminal possession of a weapon as follows: "I'll sentence you for the crime of criminal possession of a weapon in the second degree. . . five to ten years to run concurrently with life without parole." (Id. at 20.) Lacking any contrary showing that Judge Feldman had a continuing misapprehension about her ability to impose consecutive as opposed to concurrent sentences, this claim must be denied.

      2.      Claim that Counsel Failed to Present Substantial Mitigation Evidence

Petitioner's second claim, that his counsel at sentencing was ineffective for failing to present certain mitigation evidence, is also without merit. I first find that granting Edwards' Petition is not compelled by the facts of Wiggins v. Smith, 539 U.S. 510, 533 (2003). To the extent that the Petitioner has established that counsel's omission of mitigation materials at the sentencing hearing was a result of error, the Petitioner has failed to establish a reasonable probability that, but for counsel's error, the result would have been more favorable to Edwards.

With regard to the investigation and presentation of mitigating evidence, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable." Wiggins, 539 U.S. at 522 (quoting Strickland, 466 U.S. at 688-689). Indeed, the Wiggins Court quoted the American Bar Association ("ABA") instruction that defense counsel has " a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. . . " Wiggins, 539 U.S. at 525 (quoting ABA Standards for Criminal Justice 4-4.1, commentary, p 4-55). Furthermore, the Strickland Court prescribed that counsel make reasonable investigations of mitigating evidence.

14

However, Strickland and Wiggins neither require counsel to investigate every conceivable line of mitigating evidence nor require counsel to present mitigating evidence at sentencing in every case. Id. at 533 (citing Strickland, 466 U.S. at 689).

Wiggins, which found ineffective assistance of counsel based on counsel's failure to follow leads that would have led him to discover evidence of the defendant's severe abuse as a child by his alcoholic mother, sexual torment and rape in foster care, and diminished mental capacities, does not require that a writ be granted in this instance. Unlike the Petitioner in Wiggins, the Petitioner does not claim that his counsel failed to complete a thorough investigation into mitigating factors, rather, that his counsel failed to present the materials produced by prior counsel's investigation. Neither Wiggins nor any other Supreme Court ruling that this court is aware of sets forth a constitutional requirement that counsel present all potentially mitigating materials to a sentencing judge. Second, further distinguishing the case at bar from Wiggins, where the ABA standard on mitigation imposed an affirmative duty on counsel because the case included a possible death sentence, in the instant case the sentencing judge did not consider or impose the death penalty.

Moreover, a claim of ineffective of assistance requires a showing that counsel's failure to investigate or present mitigating evidence resulted in prejudice to the petitioner. See, e.g., Keith v. Mitchell, 453 F.3d 195, 2006 WL 1879646, at *9 (6th Cir. July 10, 2006) (denying ineffective assistance of counsel claim based on finding that the petitioner failed to show prejudice under Strickland, because the case against the petitioner was strong and mitigation evidence would not demonstrate that the petitioner was materially less culpable); Buckner v. Polk, 453 F.3d 195, 207 (4th Cir. 2006) (ineffective assistance of counsel claim denied based on finding of no prejudice

15

created by counsel's lack of preparation and failure to present certain mitigating evidence: "this circuit has upheld as not unreasonable state court applications of Strickland finding no prejudice from counsel's failure to introduce evidence adding negligible detail or credibility to mitigating factors that counsel had already presented to the jury").

To the extent that counsel's failure to present the actual report to the sentencing court was error, it does not constitute ineffective assistance of counsel because there is no indication that, but for the error, the sentence would have been more favorable to Edwards. Significantly, the case against the Petitioner was strong, and the mitigation material contained in the report prepared by Legal Aid would have been insufficient to demonstrate that the Petitioner's childhood traumas warranted a lesser sentence.

Lastly, the conclusion that counsel was not ineffective is compelled by the New York Supreme Court's denial of Edwards' motion to set aside his sentence, finding that the sentence of life without the possibility of parole remained appropriate in light of the facts in that report: "There is no reason to believe that defense counsel's failure to specifically argue the details of the report so prejudiced defendant that the outcome of the sentencing proceeding was adversely affected." (Ste. S. Ct., Kings County, Decision & Order dated Jun. 13, 2003 at 3.) The state court's finding of fact that facts in the mitigation report were insufficient to warrant setting aside Edwards' sentence is due deference under AEDPA, and constitutes a reasonable determination of the facts in light of the evidence presented.

"Mitigation . . . , after all, may be in the eye of the beholder." Burger v. Kemp, 483 U.S. 776, 794 (U.S. 1987) (quoting Stanley v. Zant, 697 F.2d 955, 969 & n. 11 (11th Cir. 1983)

(footnote omitted)). "In sum, an attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable." Stanley, 697 F.2d at 965.

3. Claim that Counsel Made Comments That Undermined His Purported Plea for a Measure of Leniency and Disparaged His Client

Petitioner's claim that his counsel at sentencing was ineffective for making comments that undermined his purported plea for leniency and disparaged his client is without merit, because his counsel's comments at sentencing, considered in their totality, were not professionally unreasonable.

In my review of the record, I find no evidence of remarks disparaging the Petitioner. The Petitioner directs this court to two portions of Mays' remarks. He argues that Mays' remarks emphasizing the care that Edwards received from his foster parents and the level of disappointment that he caused his foster family and community "cast him in an even worse light than if counsel had remained silent." (Edwards' Pet. at 36.) The Petitioner also seizes upon Mays' closing request that the court "show some leniency and obviously whoever did this to this young lad didn't show any leniency but I'm asking the court to show leniency." (Id. at 15-16.) These statements were clearly rhetorical tools to capture the sympathy of the judge, as demonstrated by Mays' comments reiterating Edwards' continued averment of innocence: "My client, as he's always indicated, he's indicated in the past and indicates presently quite frankly, that he is not the perpetrator and that he felt that he was railroaded." (Id. at 12.) These remarks crediting Edwards' continued assertion of innocence despite his legal guilt belie the Petitioner's

17

interpretation of the remarks as directly disparaging him or undermining his plea for leniency. Overall, to find that counsel's remarks disparaged Edwards and undermined his plea for leniency would require interpretations of the sentencing transcript that are contrary to this court's necessary indulgence of "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 694 (quoting Michel, 350 U.S. at 101).

Finding ineffective assistance of counsel on these grounds has generally required a finding of direct insult or statements by defense counsel impeaching his client. See Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991), cert denied, 503 U.S. 952 (1992) (in summation, defense counsel said that "the one you judge is not a very good person . . . I ask you for the life of a worthless man. . ." and "the prosecutor's closing made me hate my client."); Cargle v. Mullin, 317 F.3d 1196, 1217 (10th Cir. 2003) (Petition for habeas granted on the basis of ineffective assistance of counsel, and alternatively, cumulative error, where counsel ridiculed the petitioner's post-arrest video-taped statement regarding a serious injury to his hand, "inexplicably describing petitioner's statement as 'the old phony my hand don't work now deal.'"). In the instant case, the Petitioner has failed to show that any of Mays' remarks directly disparaged Edwards or impeached Edwards' prior statements. Thus, counsel's conduct does not rise to the level of disloyalty necessary to merit a finding of ineffective assistance of counsel. In addition, the Petitioner does not claim impeachment by counsel's remarks or cumulative error. See Cargle, 317 F.3d 1196.

### III. Conclusion

The errors, if any, of Petitioner's counsel at sentencing do not rise to the level of

ineffective assistance under Strickland. See Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Further, the state court decisions that counsel adequately discharged his function were reasonable applications of Strickland, and petitioner is therefore not entitled to habeas corpus relief. 28 U.S.C. § 2254(d). The Petitioner's petition for a writ of habeas is therefore denied. A certificate of appealability shall not issue. The Clerk of Court is directed to close the case.

SO ORDERED.

Date: August 15, 2006
     Brooklyn, New York

\s\
Nicholas G. Garaufis
United States District Judge